No. 14756

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

ODESSEY S. STAMATIS (Fatal),
JESSIE M. STAMATIS,

        Claimant and Appellant,

   -vs-

BECHTEL POWER CORPORATION, Employer,

     and

INDUSTRIAL INDEMNITY COMPANY,

        Defendant and Respondent.

---

Appeal from:  Workers' Compensation Court
               Honorable William E. Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Lewis E. Brueggemann argued, Billings, Montana

    For Respondent:

        Marra, Wenz, Iwen and Johnson, Great Falls, Montana
        Charles R. Johnson argued, Great Falls, Montana

---

                  Submitted:  September 20, 1979

                    Decided:  OCT 23 1979

Filed:  OCT 23 1979

_Thomas J. Kearney_
                        Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Claimant appeals from a judgment of the Workers' Compensation Court denying Workers' Compensation benefits for the death of her husband. We affirm.

Claimant's husband, Odessey S. Stamatis, was employed as an electrician by Bechtel Power Corporation at a plant near Colstrip, Montana, on March 3, 1976. He collapsed on the job, was taken by ambulance to a Forsyth hospital, and was pronounced dead on arrival.

His widow filed a claim for benefits under the Workers' Compensation Act against Industrial Insurance Company, Bechtel's Plan II carrier. A hearing was held before the Workers' Compensation Court at which much conflicting evidence was introduced by the respective parties.

Roderick Switzer, a fellow employee of decedent, testified they spent the morning of his death installing conduit sections weighing 10 to 15 pounds a piece and pulling several wires through 50 to 100 feet of the conduit. Switzer indicated this was very strenuous work involving lifting with your whole body on a pull from below your knees and crawling through a space of about three feet between the floor and bottom of a generator in the work area. Switzer testified he did not take his lunch break with decedent, but that when he returned to work thereafter he saw decedent collapse as he picked up some materials from a work bench.

The other version of what happened on the day of decedent's death came from the testimony of Gordon Ziegeldorf, a fellow employee, and Michael Laslovich, decedent's foreman.

Ziegeldorf testified that he and decedent worked together that day carrying light fixtures from a warehouse into the Bechtel plant and cleaning them preparatory to installation.

This activity involved walking 50 to 100 yards from the plant to the warehouse, carrying a single light fixture weighing about 20 pounds back to the plant each trip, loading the fixtures on an elevator that transported them to the 120 foot level of the plant, and cleaning them with soap and water at the 120 foot level. Ziegeldorf testified the work was not strenuous, did not involve heavy lifting, and did not involve climbing stairs. According to Ziegeldorf, decedent at no time complained that the work was tiring or causing him any physical discomfort. Decedent and Ziegeldorf took a coffee break at about 2:30 in the afternoon and as they were returning to work thereafter, decedent collapsed while walking ahead of Ziegeldorf and fell back into his arms.

Foreman Laslovich recalled that decedent worked with Ziegeldorf on the day of his death stocking and cleaning light fixtures. Laslovich testified that he saw decedent collapse in Ziegeldorf's arms as the men walked back to work following the afternoon coffee break. He stated that it was customary to assign decedent nonstrenuous jobs like bringing up fixtures because of decedent's age. The foreman never recalled assigning decedent to install conduit or pull wire, but admits decedent could have performed that type of work since his job as foreman did not require him to continuously supervise the men under him.

After decedent collapsed, first aid consisting of cardiopulmonary resuscitation was administered on the job site. Decedent was taken by ambulance to a hospital in Forsyth, a distance of about 35 miles. Dr. Deone Hanson pronounced decedent dead on arrival at 4:45 p.m. The Rosebud County coroner examined the body and determined the cause of death to be acute coronary thrombosis. The coroner testified his examination was not extensive enough to rule out the

- 3 -

possibility that decedent died of myocardial infarction rather than coronary thrombosis. No autopsy was performed. The body was cremated.

The record shows that decedent was a large man standing 6'2" and weighing 250 pounds. He was 54 years old at the time of his death and had no past medical history of heart disease. He smoked two packs of cigarettes a day and had been smoking since age 13. In the month preceding his death, decedent had worked 21 shifts totalling 190 hours for an average of about nine hours per shift. The Saturday before he died, February 28, he worked an eight-hour overtime shift. On the day of his death, the temperature at Colstrip, a few miles from the Bechtel plant recorded a high of +18°F and a low of -18°F. The temperature inside the plant was somewhere between +40°F and +50°F.

The medical testimony conflicted at several points.

Dr. Walter Degnan, a cardiologist, testified by deposition that decedent died of what is medically known as sudden death. Sudden death occurs when the patient dies within several hours of the onset of symptoms and is statistically related to coronary disease 80 percent of the time. According to Dr. Degnan sudden death frequently occurs without traumatic cause or previous symptoms. The doctor testified that while unusual strain increases the probability of sudden death, normal exertion will not produce a heart attack. He did not feel that the temperature the day of decedent's death had any relationship to his death. Responding to a hypothetical question based on the effect of stocking and cleaning light fixtures by a man of decedent's age and physical condition, Dr. Degnan testified that exertion was not a causal factor in his death.

Dr. Patrick Byorth, a specialist in internal medicine,

- 4 -

was also deposed. He agreed that decedent died from sudden death and that sudden death is related to a coronary incident in 80 percent of the cases. However, his opinion was that vigorous physical activity precipitated the heart problems. Responding to a hypothetical question encompassing the facts testified by witness Switzer, Dr. Byorth stated physical exercise was a probable contributing factor to decedent's death. When presented with a hypothetical question positing facts similar to the testimony of witnesses Ziegeldorf and Laslovich, Dr. Byorth testified that the physical exertion involved in decedent's activities contributed to precipitating the heart attack. The doctor further testified that working in cold weather could contribute to a heart attack.

The essence of the findings of fact by the Workers' Compensation Court was that decedent had been engaged in the task of cleaning light fixtures in the few hours prior to his collapse after a coffee break at approximately 2:45 p.m. on March 3, 1976, and that his activity was not of a strenuous physical nature, nor was it unusual, nor was the outside air temperature a factor in precipitating his collapse. The gist of the court's conclusions of law was that the preponderance of competent and credible evidence failed to sustain a conclusion that decedent suffered a compensable injury as defined in the Workers' Compensation Act. Judgment was entered denying claimant any benefits thereunder or attorney fees.

Two issues are presented for review in this appeal:

1. The sufficiency of the evidence to support the findings of the Workers' Compensation Court.

2. Did decedent suffer a compensable injury under the Workers' Compensation Act?

The test of sufficiency of the evidence is whether there is substantial evidence supporting the court's findings

of fact. Head v. Larson (1979), ___Mont.___, 592 P.2d 507, 510, 36 St.Rep. 571, 575; Strandberg v. Reber Company (1978), ___Mont.___, 587 P.2d 18, 20, 35 St.Rep. 1742, 1745; Jensen v. Zook Bros. Construction Co. (1978), ___Mont.___, 582 P.2d 1191, 1193, 35 St.Rep. 1066, 1068. This Court will not substitute its judgment for that of the Workers' Compensation Court concerning the credibility of the witnesses or the weight to be given their testimony. Dumont v. Wickens Bros. Construction Co. (1979), ___Mont.___, 598 P.2d 1099, 1106, 36 St.Rep. 1471, 1479-1480; Steffes v. 93 Leasing Co., Inc. (1978), ___Mont.___, 580 P.2d 450, 452-453, 35 St.Rep. 816, 818; Crittendon v. City of Butte (1977, ___Mont.___, 559 P.2d 816, 817,/34 St.Rep. 3, 4. Thus, where the findings are based on conflicting evidence, our function of review is confined to determining whether there is substantial evidence supporting such findings. Jensen, supra, 582 P.2d at 1194. Conversely, our function is not to determine whether there is sufficient evidence to support contrary findings.

Here the evidence is conflicting concerning the cause of death. Claimant's witnesses testified decedent performed strenuous physical activity on the job prior to his death and the exertion had a causal connection with his death. Respondent's witnesses testified that decedent did nothing strenuous or unusual and that his activities on the job in the hours preceding his death had no causal relationship to his collapse and subsequent death. The Workers' Compensation Court found respondents' witnesses more credible, gave greater weight to their testimony, and entered findings accordingly. Substantial evidence supporting such findings is found in the testimony of Ziegeldorf, Laslovich, and Dr. Degnan, summarized previously.

The second issue for review is whether decedent suffered a compensable injury under the Workers' Compensation Act. This question has two facets: (1) Did decedent suffer an injury

- 6 -

as defined by the Act? (2) Was such injury causally related to decedent's death? Dumont, supra, 598 P.2d at 1106-1109.

The Act in pertinent part defines an injury in this language:

"'Injury' or 'injured' means:

"(1) a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom . . ." Section 39-71-119(1), MCA.

We have previously interpreted this language to mean that a claimant can recover if the physical harm suffered is unusual either from the standpoint of cause or effect. Love v. Ralph's Food Store (1973), 163 Mont. 234, 242, 516 P.2d 598, 602; Robins v. Ogle (1971), 157 Mont. 328, 333, 485 P.2d 692, 695; Jones v. Bair's Cafe (1968), 152 Mont. 13, 19, 445 P.2d 923, 926. However, claimant must still prove a tangible happening of a traumatic nature. Dumont v. Wickens Bros. Construction Co., supra, 598 P.2d at 1108; Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 380-381, 546 P.2d 1055, 1058; Hurlbut v. Vollstedt Kerr Company (1975), 167 Mont. 303, 306-307, 538 P.2d 344, 346. We have explained the meaning of a tangible happening of a traumatic nature in these words.

"A tangible happening must be a perceptible happening. [Citations omitted.] Some action or incident, or chain of actions or incidents, must be shown which may be perceived as a contributing cause of the resulting injury. This court has found neurosis compensable, but a tangible, real happening must be the cause of the condition [Citations omitted.] . . . In the recent case of Love where a gradual buildup of back pain was found compensable, this Court emphasized two specific incidents of strain were perceptible from the record." Erhart, supra, 169 Mont. at 381.

Here, there is no tangible happening of a traumatic nature. The Workers' Compensation Court found that claimant had been engaged in cleaning light fixtures preceding his collapse and that this activity was not of a strenuous physical nature, nor

- 7 -

unusual, nor was the outside air temperature a factor in precipitating his collapse.  Taking this view of the facts, there is simply no evidence in the record of any real, perceptible or identifiable incident, action or happening of a traumatic nature within the definition of injury in the Act.

Finding no injury, the required causal connection likewise fails.  Accordingly, we hold there is no compensable injury as defined in the Workers' Compensation Act.

Affirmed.

_____
Chief Justice

We concur:

_____ ,

_____

_____
Justices

- 8 -