No. 00-067

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 260

301 Mont. 527

11 P.3d 1199

KATHLEEN M. KING, Widow of Russell King,

Deceased Employee/Claimant, on behalf of herself

and her three youngest children: May, Phillip,

and Sarah, and MELISSA R. KING, adult invalid

child of Russell King,

Petitioners and Appellants,

v.

TTC ILLINOIS, INC., and SAMMONS TRUCKING,

Employer and Respondent,

and

CREDIT GENERAL INSURANCE COMPANY,

Insurer and Respondent.

APPEAL FROM: Workers' Compensation Court,

Honorable Mike McCarter, Judge Presiding

COUNSEL OF RECORD:

For Appellants:

Sydney E. McKenna and Charles J. Tornabene, Tornabene &

McKenna, Missoula, Montana

For Respondent:

Robert Sheridan, Garlington, Lohn & Robinson, Missoula, Montana

Submitted on Briefs: August 24, 2000
Decided: September 28, 2000

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶1 The widow and four children of Russell King appeal the decision of the Workers' Compensation Court that they are not entitled to workers' compensation benefits as a result of King's death. We affirm.

¶2 The sole issue on appeal is whether the Workers' Compensation Court erred in ruling that the death of Russell King was not compensable under the Montana Workers' Compensation Act of 1993.

¶3 Russell King died on June 26, 1995, at the age of 45. He was survived by his wife Kathleen King and six children. Three of King's children (Phillip, Mary, and Sarah) were minors when he died. King's daughter Melissa, who was an adult at the time of her father's death, has spina bifida and hydrocephalus and uses a wheelchair.

¶4 King was employed as an over-the-road truck driver for TTC Illinois, Inc. The truck King was driving was owned by Sammons Trucking and leased by TTC. TTC was insured by Credit General Insurance Company under Plan II of the Montana Workers'

Compensation Act.

¶5 On June 26, 1995, around 1:00 p.m., King stopped at the PowerMatic plant in Finksburg, Maryland, to pick up heating units for TTC. Upon arriving, King unstrapped two folded tarps he carried on the flat bed of his truck. PowerMatic's shipping and receiving employee, Tony Mack, brought a forklift alongside the trailer and raised the forks up to the height of the trailer bed where the tarps were. He and King then slid the 60 to 70-pound tarps approximately four feet from the trailer onto the forklift. According to Mack, this was accomplished without difficulty and King did not appear to have unusually exerted himself.

¶6 Another PowerMatic employee then loaded the heating units onto the flat bed trailer. King, "chitchatting" with Mack, said something to the effect of, "Boy, it's kind of hot out here." Mack noticed a drop of sweat running down King's face, but did not view this as unusual in the approximate 85 degree temperature and 90 percent humidity.

¶7 After the heating units were loaded, King got out some straps and prepared to strap the heating units to the truck. King worked on laying the straps out for about half an hour, after which he told Mack he wanted to "take a little nap" and went to lie down in his truck cab. Mack checked on King twenty minutes later and was unable to rouse him. Around 2:00 p.m., a state police officer determined that King was dead.

¶8 A Maryland medical examiner who participated in King's autopsy stated that King died of atherosclerotic cardiovascular disease which had been present for some time. In the medical examiner's opinion, King's death was immediately preceded by sudden arrhythmia, or abnormal electrical activity in the heart, which could have occurred spontaneously or could have been triggered by King's activities immediately prior thereto. The medical examiner maintained, however, that the underlying cause of death was King's chronic severe atherosclerotic disease.

¶9 The Kings brought this suit following Credit General's denial of liability for their workers' compensation death claim.

## Discussion

¶10 Did the Workers' Compensation Court err in ruling that the death of Russell King was not compensable under the Montana Workers' Compensation Act of 1993?

¶11 A claimant has the burden of proving his or her entitlement to benefits under the Workers' Compensation Act. *DuMont v. Wickens Bros. Constr. Co.* (1979), 183 Mont. 190, 201, 598 P.2d 1099, 1105. We review the findings of fact of the Workers' Compensation Court to determine whether they are supported by substantial credible evidence. *EBI/Orion Group v. Blythe* (1997), 281 Mont. 50, 53, 931 P.2d 38, 39. We review conclusions of law to determine whether the lower court's interpretation of the law was correct. *Blythe*, 281 Mont. at 53, 931 P.2d at 39.

¶12 Section 39-71-407, MCA, provides, "Each insurer is liable for the payment of compensation . . . to an employee of an employer that it insures who receives an injury arising out of and in the course of employment or, in the case of death from the injury, to the employee's beneficiaries, if any." Section 39-71-119, MCA (1993), provides the definition of work-related injury applicable to this case:

> **Injury and accident defined.** (1) "Injury" or "injured" means:
>
> (a) internal or external physical harm to the body;
>
> (b) damage to prosthetic devices or appliances, except for damage to eyeglasses, contact lenses, dentures, or hearing aids; or
>
> (c) death.
>
> (2) An injury is caused by an accident. An accident is:
>
> (a) an unexpected traumatic incident or unusual strain;
>
> (b) identifiable by time and place of occurrence;
>
> (c) identifiable by member or part of the body affected; and
>
> (d) caused by a specific event on a single day or during a single work shift.
>
> (3) "Injury" or "injured" does not mean a physical or mental condition arising from:
>
> (a) emotional or mental stress; or

(b) a nonphysical stimulus or activity.

(4) "Injury" or "injured" does not include a disease that is not caused by an accident.

(5) A cardiovascular, pulmonary, respiratory, or other disease, cerebrovascular accident, or myocardial infarction suffered by a worker is an injury only if the accident is the primary cause of the physical harm in relation to other factors contributing to the physical harm.

¶13 The Kings assert that because King died on the job and under the above definition his death is an injury, the law requires only that they prove that work related activities resulted in an unusual strain or effect. They maintain that they have established an unusual effect-i. e., King's death. This "unusual effect" argument is based upon this Court's previous rulings, in other contexts, that "unusual strain" under the Workers' Compensation Act refers to either cause or effect. *See, e.g., Shepard v. Midland Foods, Inc.* (1983), 205 Mont. 146, 666 P.2d 758.

¶14 However, the Kings' contention that they are entitled to benefits because an unexpected death constitutes an "unusual effect" ignores the other essential elements of an accident set forth in the above statute. A statute must be construed so as to give meaning to all of its parts. Section 1-2-101, MCA. Therefore, in determining whether an injury has occurred under § 39-71-119, MCA (1993), all of the conditions set forth in subsection (2) must be satisfied. In particular, under (2)(d), the accident must have been "caused by a specific event on a single day or during a single work shift."

¶15 The Kings retained cardiovascular surgeon Dr. James H. Oury as an expert medical witness. After reviewing the autopsy results and the circumstances of King's death, Oury opined that King's activity in helping to slide the tarps from the flat bed of his truck to the forklift triggered an arrhythmia leading to his death. Oury theorized that this activity caused a plaque rupture in King's left anterior descending artery, which in turn triggered the arrhythmia. He acknowledged, however, that plaque ruptures and sudden coronary failure often occur in the absence of physical activity. He also acknowledged that King's medical records referenced several factors associated with the risk of death from coronary disease, including high blood pressure, high cholesterol, and a history of smoking.

¶16 Dr. Stan Wilson, a cardiologist, testified as Credit General's expert witness. Wilson agreed that the most likely cause of King's death was arrhythmia, but he disagreed with

Oury as to the cause of the arrhythmia. He noted that King's medical records showed that he had underlying three-vessel coronary artery disease. Wilson attributed King's arrhythmia and death to that preexisting coronary artery disease, and characterized as "speculative and unlikely" attribution of the plaque rupture to King's activities on the day he died. His rejection of that theory was based upon the absence of evidence that King exerted extraordinary effort on that day and upon his own experience that it was much more common for arrhythmia to occur when the patient was not engaged in physical exertion.

¶17 The Workers' Compensation Court stated that the difference in medical opinions in this case reflected a legitimate difference in medical judgment. After reviewing all of the testimony, the court stated it was unpersuaded that King's activities on June 26th triggered either his heart arrhythmia or his death. In reaching this conclusion, the court took note of Oury's initial erroneous factual assumption that King had "helped load heating units onto his truck," whereas the evidence was that King's level of exertion on June 26th was instead limited to sliding two plastic tarps about four feet, with Mack's help. The court also noted Oury's acknowledgment that more people in the United States suffer plaque ruptures while inactive than while active. Finally, the court noted the discrepancy between Oury's opinion that an arrhythmia typically follows a plaque rupture "within minutes, not hours," and the evidence that at least half an hour and probably closer to an hour passed between the activity which Oury posited as the triggering event--moving the tarps--and when King went to his truck to take a nap.

¶18 The Workers' Compensation Court stated,

> the Court is not persuaded that any work-related activity triggered a cardiac arrhythmia or caused decedent's death. King was not engaged in any unusual or strenuous work-related activity on June 26th which is even remotely comparable to activity which has been found in prior cases as triggering cardiovascular events. That lack of comparability is not fatal to claimant's case; each case must be decided on its own facts and in light of the specific medical testimony. However, the medical testimony in this case failed to persuade me that King's moving of tarps triggered his arrhythmia or death. It is equally, or even more likely that his death would have occurred whether or not he had moved the tarps.

Under the record here presented, we agree. While Oury's opinion, standing alone, might arguably support a finding that sliding the tarps from the trailer to the forklift was a work-

related activity which was sufficient to cause a plaque rupture in one of King's coronary arteries, that opinion was not unequivocal, especially after its faulty factual basis was exposed. Because Oury testified in person before the Workers' Compensation Court, that court was in a better position than are we to judge his credibility and give his testimony the weight it deserves.

¶19 Substantial evidence clearly supports the court's findings. This supporting evidence includes the expert testimony of both Wilson and the Maryland medical examiner, as well as the testimony of Tony Mack, who was with King throughout the time he was at the PowerMatic plant.

¶20 The Workers' Compensation Court's decision is in line with previous cases concerning claims for death from heart-related causes. In *Ness v. Diamond Asphalt Co., Inc.* (1964), 143 Mont. 560, 393 P.2d 43, this Court affirmed a finding that an employee's death was due to natural causes and unrelated to his employment when he died at work as the result of a myocardial infarction. A cardiologist had testified that there was no relationship between the employee's death and his employment; his death occurred while he was at work, but not as a result of his work.

¶21 This Court also rejected a claim that a heart attack was compensable when the employee was working in cold temperatures but had not performed an inordinate kind or amount of work. *Hurlbut v. Vollstedt Kerr Co.* (1975), 167 Mont. 303, 538 P.2d 344. The Court held that the employee had not sustained an injury, i.e., a tangible happening of a traumatic nature, and had failed to establish a causal connection between his work activities and the heart attack.

¶22 In *Stamatis v. Bechtel Power Corp.* (1979), 184 Mont. 64, 601 P.2d 403, the worker collapsed and died on the job as the result of an acute coronary thrombosis. A cardiologist testified that the work which the employee had been doing prior to his death, installing light fixtures weighing approximately twenty pounds apiece, was not a causal factor in his death. Another expert, a specialist in internal medicine, disagreed, opining that vigorous physical activities precipitated the worker's heart problems. The Workers' Compensation Court determined that the employee's death was not caused by work-related activities. This Court affirmed, holding that although an unusual strain may be established through an unusual result, "'[s]ome action or incident, or chain of actions or incidents, must be shown which may be perceived as a contributing cause of the resulting injury.'" *Stamatis*, 184 Mont. at 70, 601 P.2d at 406 (quoting *Erhart v. Great Western Sugar Co.* (1976), 169

Mont. 375, 381, 546 P.2d 1055, 1058).

¶23 In contrast, cases in which cardiovascular accidents are compensable involve a clear relationship between work-related activity and the cardiovascular event. *See, e.g., Tocco v. City of Great Falls* (1986), 220 Mont. 221, 714 P.2d 160 (city employee died as a result of a heart attack after performing unusually strenuous physical labor on a garbage route- he was fifty-six stops ahead of schedule on his route by lunchtime, and was stricken at 2:30 p. m).

¶24 We hold that the Workers' Compensation Court was correct in denying the Kings' claim for benefits, because the Kings did not meet their burden of establishing that Russell King's death was "caused by a specific event on a single day or during a single work shift" as required under § 39-71-119(2)(d), MCA (1993). Because the Kings failed to establish that element, we need not address the parties' arguments as to whether subsections (3), (4), and (5) of the statute apply to this case. We affirm the decision of the Workers' Compensation Court.

/S/ J. A. TURNAGE

We concur:

/S/ JIM REGNIER

/S/ W. WILLIAM LEAPHART

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.