JUSTICE LEAPHART
delivered the Opinion of the Corut.
¶1 Appellant Edna Hanks (Hanks), appeals the Workers’ Compensation Court’s dismissal of her workers’ compensation claim with prejudice. We affirm.
¶2 The sole issue on appeal is whether the Workers’ Compensation Court erred in concluding that Hanks had suffered an injury under the Workers’ Compensation Act and in turn dismissing her occupational disease claim?
Background
¶3 On July 31,1995, Hanks went to work for Partners in Home Care, Incorporated (Partners), as a home-care aide. Her job entailed helping patients with baths and their basic personal care, including helping wheelchair bound patients into and out of their wheelchairs. In *265 January 2001, Hanks, then 65 years old, felt a “krik” or “twinge” in her back while helping an Alzheimer’s patient dress. Hanks described the event as causing a “pop-type sound” and “a little pain.” She did not report the incident to her supervisor at the time.
¶4 Prior to the “krik” incident, Hanks had never experienced back problems. Following the “krik” incident, Hanks continued to experience pain. Two or three days after the incident, Hanks began having difficulty getting into and out of her car due to pain radiating into her right leg. On February 8, 2001, Hanks visited Dr. Susan Selbach, her family physician. Dr. Selbach’s office notes for that visit state that Hanks “complains that she has been having some right-sided lower back pain that goes down into her buttocks, has doubled her over on occasion.” When considering possible etiologies of the pain, Dr. Selbach noted only, “She does not remember any recent falls.”
¶5 Despite a trial of physical therapy, Hanks continued to experience low-back pain radiating into her buttocks and leg. On March 13,2001, Hanks underwent an MRI which revealed a left-sided protruding disc at the L4-5 level, as well as significant degenerative changes at that level. Dr. Selbach restricted Hanks to light duty on March 27, 2001, and referred her to Dr. Carter Beck, a neurosurgeon. The next day Hanks told her supervisor about her back pain and the “krik” incident. Hanks’ supervisor filled out a first report that day which indicated that Hanks’ pain was “chronic” and that Hanks was “not sure” of the cause of her pain. Hanks could not recall the date of the “krik” incident, only that it had occurred a couple of months previous, probably sometime in mid-January.
¶6 Hanks was seen by Dr. Beck on April 3, 2001. He reviewed her MRI, which he read as showing “lumbar stenosis at L4-5 where there is bilateral neural foraminal stenosis and subarticular recess stenosis.” On May 9, 2001, he performed a bilateral L4-5 laminotomy and foraminotomy with partial mesial facetectomy.
¶7 Liberty, the insurance provider for Partners, denied Hanks benefits on account of her failure to report the “krik” incident to her employer within 30 days of its occurrence as required by the Workers’ Compensation Act.
¶8 On August 27, 2001, at the request of the Department of Labor and Industry, Dr. Randale C. Sechrest, an orthopedic surgeon, examined Hanks. Dr. Sechrest reported that Hanks suffered from “long-standing degenerative changes in the lumbar spine” which were rendered symptomatic in J anuary or February of2001, and most likely were aggravated by her activity at work. In his report, Dr. Sechrest *266 stated that Hanks’ need for surgery “arose from her underlying degenerative disease” and “spinal stenosis secondary to [her] longstanding degenerative” disease. In his deposition, he reiterated that Hanks had long-standing and extensive degenerative back disease, but also added that her condition was aggravated and made symptomatic by the “krik” incident.
¶9 The Workers’ Compensation Court granted Hanks’ petition for an emergency trial, which was conducted on December 10, 2001. On March 22, 2002, it issued a judgment dismissing Hanks’ claim with prejudice based on its findings that although Hanks had suffered an injury under the Workers’ Compensation Act, she had failed to comply with the Act’s 30-day notice requirement. Hanks appeals from this judgment. We affirm.
Discussion
¶10 Did the Workers’ Compensation Court err in concluding that Hanks had suffered an injury under the Workers’ Compensation Act and in turn denying her occupational disease claim?
¶11 A claimant has the burden of proof that he or she is entitled to benefits under the Workers’ Compensation Act. King v. TTC Illinois, Inc., 2000 MT 260, ¶ 11, 301 Mont. 527, ¶ 11, 11 P.3d 1199, ¶ 11. This Court reviews the Workers’ Compensation Court’s findings to determine whether they are supported by substantial credible evidence and reviews its conclusions of law to determine whether they are correct. See Schimmel v. Montana Uninsured Employers Fund, 2001 MT 280, ¶ 5, 307 Mont. 344, ¶ 5, 38 P.3d 788, ¶ 5.
¶12 Workers’ compensation benefits are determined by the statutes in effect as of the date of injury. Buckman v. Montana Deaconess Hosp. (1986), 224 Mont. 318, 321, 730 P.2d 380, 382. The 1999 version of the Act applies since it was in effect at the time of Hanks’ “krik” incident. Accordingly, all statutory references hereinafter will be to the 1999 version of the Act unless otherwise indicated.
¶13 The 30-day notice requirement of the Workers’ Compensation Act is located at § 39-71-603, MCA, and provides as follows:
A claim to recover benefits under the Workers’ Compensation Act for injuries not resulting in death may not be considered compensable unless, within 30 days after the occurrence of the accident that is claimed to have caused the injury, notice of the time and place where the accident occurred and the nature of the injury is given to the employer or the employer’s insurer by the injured employee or someone on the employee’s behalf.
*267 This provision of the Act is mandatory, and compliance with the notice requirement is indispensable to maintaining a claim for compensation. Reil v. Billings Processors, Inc. (1987), 229 Mont. 305, 309-10, 746 P.2d 617, 619. The purpose of the notice requirement is to enable the employer to protect itself by prompt investigation of the claimed accident and prompt treatment of the injury to minimize its effect. Larson v. Barry Smith Logging, Inc. (1994), 267 Mont. 444, 448, 884 P.2d 786, 788-89; Bender v. Roundup Mining Co. (1960), 138 Mont. 306, 313, 356 P.2d 469, 473.
¶14 Because it is undisputed that Hanks failed to report the “krik” incident to Partners within 30 days of its occurrence, the threshold question in this case is whether the “krik” incident qualifies as an “injury” under the Workers’ Compensation Act. If it does, Hanks’ failure to meet the mandatory requirements of the Act, specifically her failure to timely notify her employer, bars her from receiving workers’ compensation benefits.
¶15 Injury, under the Workers’ Compensation Act, is defined as “an unexpected traumatic incident or unusual strain; identifiable by time and place of occurrence; identifiable by member or part of the body affected; and caused by a specific event on a single day or during a single work shift.” Section 39-71-119(2), MCA. In its ruling, the Workers’ Compensation Court adopted Liberty’s argument that Hanks’ back problems arose from a specific event, the ‘Talk” incident, and thus ruled that the “krik” incident did qualify as an injury subject to the Workers’ Compensation Act and its 30-day notice provision. In concluding that the “krik” incident qualified as an injury, the court emphasized Hanks’ own testimony that prior to the “krik” incident, she had never suffered back problems and that severe pain followed the “krik” incident within a couple of days. This testimony confirms that Hanks’ back problems were brought about by the “krik” incident. We conclude that the Workers’ Compensation Court’s decision was based on substantial credible evidence. Therefore, we affirm its ruling that Hanks suffered an injury to which the notice provision of the Workers’ Compensation Act applies.
¶16 In some instances, however, the 30 days may be tolled if the employee has a reasonable belief at the time of an accident that he or she has suffered no injury which will require treatment or is otherwise compensable until he or she learns otherwise. Killebrew v. Larson Cattle Co. (1992), 254 Mont. 513, 521, 839 P.2d 1260, 1265. In this instance, Hanks’ own testimony that severe pain followed the “krik” incident within a couple of days precludes the tolling of the 30 days. *268 This statement confirms that Hanks should have been on notice of the possible relationship between the “krik” incident and her increasing symptoms at that time. Even if this Court were to determine that the 30 days did not start running until a couple of days after the “krik” incident, when Hanks started to experience pain, Hanks did not report the injury to her employer within 30 days of the pain commencing. Hanks failed to notify her employer within 30 days from the date of either the incident itself, or the onset of pain a few days later. Therefore, she is barred from recovering under the Workers’ Compensation Act.
¶17 Hanks maintains that the Workers’ Compensation Act and its 30-day notice requirement do not apply to her because she did not suffer an injury, but rather she suffers from an occupational disease. To that end, Hanks contends that her work-related activity preceding and following the “krik” incident caused her back problems. Therefore, Hanks argues that she is entitled to benefits under the Occupational Disease Act. Instead of a 30-day notice requirement, the Occupational Disease Act requires employer notification within one year of the claimant actually or constructively learning that his or her condition results in an occupational disease. Section 39-72-403, MCA.
¶18 Occupational disease is defined as “harm, damage, or death as set forth in § 39-71-119(1) arising out of or contracted in the course and scope of employment and caused by events occurring on more than a single day or work shift” Section 39-72-102(10), MCA (emphasis added). By affirming the Workers’ Compensation Court’s ruling that Hanks suffered from an injury, this Court necessarily recognizes that her condition was “caused by a specific event on a single day or during a single work shift.” Section 39-71-119(2), MCA (emphasis added). Consequently, Hanks is not entitled to bring a claim under the Occupational Disease Act given that her injury did not occur on more than a single day. Moreover, in order for a condition to qualify as an occupational disease under Montana’s Occupational Disease Act, it must arise “in the course and scope of employment,” § 39-72-102(10), MCA, and be “incidental to the character of the business.” Section 39-72-408, MCA. Hanks, however, has not offered any testimony that her underlying preexisting back disease was incidental to her work at Partners and, therefore, has not established that she suffers from an occupational disease. Accordingly, the Workers’ Compensation Court was correct in denying her occupational disease claim with prejudice. ¶19 Finally, Hanks urges this Court to reverse the ruling of the Workers’ Compensation Court because denying her benefits is contrary *269 to public policy. While one “objective of the Montana workers’ compensation system [is] to provide, without regard to fault, wage supplement and medical benefits to a worker suffering from a work-related injury or disease,” § 39-71-105, MCA, the general intent expressed in that statute is qualified by the particular intent of the 30-day notice requirement of § 39-71-603, MCA. Our precedent clearly states that “[n]otice under the statute is mandatory, and compliance is indispensable to maintaining a claim for compensation.” Larson v. Barry Smith Logging, Inc. (1994), 267 Mont. 444, 449, 884 P.2d 786, 789; Reil v. Billings Processors, Inc. (1987), 229 Mont. 305, 309, 746 P.2d 617, 619.
¶20 The Workers’ Compensation Court’s ruling that the “krik” incident was a single identifiable incident occurring in a single work shift, thus meeting the criteria of an injury, is based on substantial credible evidence. Therefore, the Workers’ Compensation Court did not err in concluding that Hanks failed to comply with the 30-day notice requirement of the Workers’ Compensation Act and in dismissing her occupational disease claim with prejudice.
CHIEF JUSTICE GRAY, JUSTICES NELSON and RICE concur.