No. 12427

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

DELLA M. LOVE,

Claimant and Respondent,

-vs-

RALPH'S FOOD STORE, INC.,

Employee and Appellant,

and

TRUCK INSURANCE EXCHANGE,

Defendant and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellants:

Bennett and Bennett, Bozeman, Montana
Lyman Bennett, Jr. and Lyman Bennett III argued, Bozeman,
Montana

For Respondent:

Thomas A. Olson argued, County Attorney, Bozeman
Montana

---

Submitted: September 27, 1973

Decided: DEC 5 1973

Filed: DEC 5 1973

*Thomas J. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by the employer's insurer in a Workmen's Compensation case. The Workmen's Compensation division (formerly the Industrial Accident Board) found no compensable injury and denied the employee's claim. On appeal, the district court heard additional testimony, found a compensable injury and awarded the employee benefits totaling $9,259.86. The employer's insurer now appeals from that judgment.

Claimant is Della M. Love, an employee of Ralph's Food Store, Inc. in Bozeman, Montana. The employer's Plan II insurer under the Montana Workmen's Compensation Act is Truck Insurance Exchange.

Claimant was employed as a meat wrapper at the store. In general her duties involved wrapping and marking meat, cleaning and stocking the meat display cases, and washing parts of the meat saws and grinders. She claims to have suffered an accidental injury to her lower back resulting in temporary total and permanent partial disability as well as substantial medical expenses.

Claimant filed a claim for compensation with the Workmen's Compensation Division on January 16, 1969. She claimed an accidental injury to her lower back on August 26, 1968 which she described as caused "by continuously lifting something heavy" and that she had developed a type of arthritis. She attached a letter to her claim stating in relevant part that she did not "quite understand how industrial accident operates but Dr. Whitehair (her attending physician) was very positive that this was an industrial accident claim * * *." This letter went on to indicate that she was required to unload freight for the meat department and carry it into the meat department which involved heavy lifting.

Subsequently her employer filed his first report of injury giving August 29, 1968 as the date of claimant's injury and describing the injury in this language: "Unknown complaint of back and said she could not lift trays above her shoulders."

The claim adjuster for the employer's insurer filed a report indicating that claimant "claims back hurt, no particular incident, 'just an accumulation

of all the lifting'" and filed a memo with his superior stating that "From information of claimant there was no accident and an accumulation of lifting."

Dr. Whitehair, claimant's primary attending physician, lists a variety of dates for the accident in various reports and claims for his services filed with the Workmen's Compensation Division: July 16, 1968, approximately July 20, 1968, June 15, 1968. Dr. Kelly, who performed surgery on claimant, listed the date of the accident as August 29, 1968. The hospital and physical therapist indicated the date of claimant's accident as September 18, 1968 (the date of claimant's admission to the hospital).

An employee of the Workmen's Compensation Division talked to claimant over the phone and filed the following memorandum stating in pertinent part:

> "On the day she alleges injury they were having a chuck roast sale. She had to lift many more trays of meat on this day, and handle more chuck roasts, which are heavy, than usual. She also cleaned the grinder etc. which weighs about 50# * * * she had done this many times before. However, the chuck roast sale made it necessary to lift many more roasts on this particular day."

A hearing on the claim was held before the Workmen's Compensation Division. Testimony indicated that claimant had had back problems prior to the alleged injury. Dr. Whitehair, her physician, indicated that X-rays taken about a year prior to the alleged injury did not reveal much more than a little early osteoarthritis of the spine which, according to the doctor, is not at all unusual. At that time claimant missed no work and responded to conservative therapy consisting of muscle relaxants, pain killers, and ultrasound diathermy.

Dr. Whitehair testified that on September 3, 1968 he again examined claimant and found fundamentally different problems at this time as compared with earlier examinations. This time claimant was hospitalized for five days and treated for nerve root irritation by traction and muscle relaxants. After her release, claimant was permitted to work where it would not require lifting anything over 5 pounds.

In early 1970 claimant was again hospitalized. A myelogram indicated

a herniated disc and surgery was recommended. During surgery a fragment of nucleus pulposus was found in the nerve canal where the nerve goes into the vertebrae and removed.

At this hearing claimant's testimony was very confusing concerning the dates of the occurrence she relies upon as the basis of her claim for compensation. She testified under cross examination that she suffered an injury on July 13, 1968 and another on August 26, 1968, illustrated by the following testimony:

> "Q. Let's talk about the early part of July; what happened, if anything? A. I don't know what you mean.
>
> "Q. The reason for the question is this, Mrs. Love: you indicated on Exhibit 'B' your injury occurred July 13th. A. It started then.
>
> "Q. All right, tell us what happened then? A. I was just unloading the boxes and washing the meat parts and it started, my back started twinging in the lower part, and that's the date it started, when it was noticeable.
>
> "Q. Did something happen on the 26th of August different than what happened in July? A. It just built up to the point where I couldn't stand it any longer.
>
> "Q. Right, you had a heavy lifting job, am I right? A. Yes.
>
> "Q. You had a heavy lifting job for quite awhile? A. Yes.
>
> "Q. And finally it got too much for you, is that right? A. Yes."

Sometime in the latter part of July or the first part of August a change in butchers occurred which required claimant to do heavier work than before. Claimant testified to a particular incident that occurred after the new butcher came. She had washed heavy parts of the meat grinder and was lifting them out of a low sink when she had sharp pains in the lower part of her back. Claimant testified she had a lot of trouble with her back after this, that her back got progressively worse, and she finally could not do the work any longer.

The hearings officer for the Workmen's Compensation Division made findings of fact "That no specific date and no specific incident has been established to indicate that an accidental injury occurred that is compensable

under the provisions of the Workmen's Compensation Act." and "That claimant failed to establish by a preponderance of credible evidence that she suffered an accidental injury as defined in Section 92-418, R.C.M. 1947." Conclusions of law were entered that claimant did not suffer a compensable injury and was not entitled to benefits under the Workmen's Compensation Act.

Claimant appealed this decision to the district court of Gallatin County. The district court, over the insurer's objections, permitted additional testimony by claimant concerning dates and occurrences forming the basis of the claim for compensation.

At the hearing in district court claimant testified she first hurt her back at the store on July 12, 1968. Her testimony concerning that incident is as follows:

> "Q. What particular incident happened that day? A. Well, when Carl Geertz took over Ralph's Food Store he was having me wash the meat grinder and saw parts. And I was washing the funnel type thing that the meat goes into for the meat grinder. And it was in the sink and I was washing it, and I was trying to get it up and my back hurt so bad I had to drop it. I couldn't lift it. And Fay, I asked Fay if he would finish washing it, and he did. I had to go sit down."

Claimant testified that she continued working although her back was bothering her. She testified that the butcher would help her by doing part of her work.

Claimant testified that in August a change of butchers occurred. At that time a change took place in claimant's duties--thereafter claimant had to carry lunch meat and bacon from the back room where the truck unloaded it to the meat department, and had to wash a casing weighing 50 to 60 pounds that went on the outside of the meat saw. She testified concerning an incident that occurred in the latter part of August:

> "Q. And towards the end of August did you remember a particular incident that happened? A. Well, my back just kept getting worse and worse. I just had to sit down more often.
>
> "Q. Did you try to lift that 50 pound piece of metal? A. Yes, I tried to.
>
> "Q. Did it hurt your back? A. Yes.
>
> "Q. This would be about the end of August. What happened to you after these change of duties, what did your back do?

- 5 -

A. Well, I found out -- I think it was going into muscle spasms, which I didn't know it was doing.

"Q. For example, what kind of symptoms did you have?
A. I had constant pain, and my legs hurt when I stood. And it would take me a few minutes to make up my mind that I would take a step before I could do it.

"Q. You had trouble walking? A. Yes. I knew it was going to hurt.

"Q. When you went to the doctor that was just in the first part of September, whatever the records show? A. Yes."

Claimant went on to explain that the dates in the different reports were approximations and that the variance in dates in the different reports were in some cases typographical errors and in some cases errors of memory.

The district court found that claimant received a compensable industrial accident on July 12 and in late August, 1968, and awarded her temporary total disability compensation, permanent partial disability compensation, and medical expense benefits totaling $9,259.86. From this award, the employer's insurer appeals.

We will summarize the issues for review in this fashion:

(1) Did claimant suffer a compensable industrial accident within the coverage of the Montana Workmen's Compensation Act?

(2) Is the claim barred by the one year statute of limitations in section 92-601, R.C.M. 1947?

(3) Did the district court properly permit additional evidence to be taken from claimant at the district court hearing?

(4) Did the district court err in determining the amount of the award to claimant?

The first issue is the principal issue in this appeal. The thrust of appellant's argument is that claimant did not establish a tangible happening of a traumatic nature constituting an unusual strain at a specific point in time; therefore there is no compensable injury; and the hearings officer of the Workmen's Compensation Division correctly so found. Appellant further argues that there was no evidence at the district court hearing preponderating against such finding so it must stand.

Section 92-418, R.C.M. 1947, as it existed at the time of this claim,

- 6 -

defines a compensable injury under the Workmen's Compensation Act:

> "Injury or injured defined. 'Injury' or 'injured' means a tangible happening of a traumatic nature from an unexpected cause or unusual strain, resulting in either external or internal physical harm, and such physical condition as a result therefrom and excluding disease not traceable to injury."

Two cases have construed that part of the foregoing statute relating to the term "or unusual strain" added by legislative amendment in 1967, Jones v. Bair's Cafes, 152 Mont. 13, 19, 445 P.2d 923 and Robins v. Ogle, 157 Mont. 328, 333, 485 P.2d 692.

Jones involved the compensability of a back injury resulting from a dishwasher picking up a heavy tray of dishes from the floor during an unusually heavy work schedule due to a basketball tournament crowd. In construing the meaning of the term "or unusual strain" added by legislative amendment in 1967 and how the Court should measure it, we concluded:

> " * * * By adding the separate distinct phrase, 'or unusual strain,' the legislature intended to cover just such a situation as we have here. There was no 'unexpected cause' but there was an 'unusual strain;' thus the measure would seem to be the result of a tangible happening of a traumatic nature which results in physical harm, be it a rupture, a strain or a sprain."

In Robins this Court considered the compensability of a back injury received by a cook mopping a cafe floor who was lifting a mop pail full of water when she felt a pull and a burning sensation. In holding the injury compensable we said:

> " * * *The preposition 'or' preceding the term 'unusual strain' simply signifies a tangible happening of a traumatic nature either (1) from an unexpected cause, or (2) from an unusual strain. Accordingly, a tangible happening of an unexpected nature from an unusual strain qualifies, irrespective of whether the strain is 'unusual' from the standpoint of cause or effect. While it may be arguable in the instant case whether the strain was unusual from the standpoint of cause, it is clear that the effect here was unusual--herniation of an intervertebral disc resulting from picking up the bucket in the wrong manner and turning to pick up the mop. An unusual result from a work-related strain qualifies as 'an unusual strain' under section 92-418, R.C.M. 1947. * * *"

Both Jones and Robins make it clear that the statute requires a tangible happening of a traumatic nature in addition to the resulting unusual strain.

Here the decision of the hearings officer of the Workmen's Compensation Division appears to be predicated on the absence of such tangible happening of a traumatic nature. The memorandum opinion accompanying this decision, after pointing out the discrepancies and contradictions concerning the date of the injury and the cause of claimant's back problems, concludes with this statement:

> "The confusion as to the date of accident along with the statements and testimony about the gradual buildup of back pain tend to indicate that there is no compensable injury under the provisions of the Workmen's Compensation Act."

However at the hearing in district court this confusion was explained by claimant and the district judge believed her. Her testimony clearly supported two specific injuries, one on July 12 in which she was trying to lift a part of a meat grinder to wash it in a low sink and strained her back to the extent she dropped it; and the second on August 26 when she tried to lift a 50 pound casing on the meat saw and suffered muscle spasms. In fact there was no testimony to the contrary except the confusion that arose from claimant's own testimony before the Workmen's Compensation Division.

In cases where the district court hears a Workmen's Compensation appeal on the basis of the record before the Board plus additional testimony, the district court becomes trier of the facts, and the judge of the credibility of any witness de novo as to such additional testimony. Dosen v. East Butte Copper Mining Co., 78 Mont. 579, 254 P. 880; Novak v. Industrial Accident Board, 73 Mont. 196, 235 P. 754; Nicholson v. Roundup Coal Min. Co., 79 Mont. 358, 257 P. 270; Paulich v. Republic Coal Co., 110 Mont. 174, 102 P.2d 4. Where the district court receives additional evidence not presented to the Board, every presumption is in favor of correctness of the district court's decision. Obie v. Obie Signs, Inc., 143 Mont. 1, 386 P.2d 68. Here the testimony of claimant in district court, although inconsistent in some respects to that given in the hearing before the Board, was nevertheless believed by the district court and under such circumstances constitutes a preponderance of substitute evidence supporting the district court's finding.

The second issue for review is whether the claim is barred by section

92-601, R.C.M. 1947. This statute provides:

> "Claims must be presented within what time. In case of personal injury or death, all claims shall be forever barred unless presented in writing under oath to the employer, the insurer, or the board, as the case may be, within twelve months from the date of the happening of the accident, either by the claimant or someone legally authorized to act for him in his behalf."

In our view this contention lacks any substance.

Claimant filed a claim for compensation with the Industrial Accident Board on January 16, 1969, covering an injury on August 26, 1968. This was well within the twelve month period required by section 92-601, R.C.M. 1947. Because the record indicates that the two injuries during the summer of 1968 were closely intertwined and related, it would be unconscionable to deny claimant redress because the July 12 injury was not specifically identified.

The issue of the bar of the statute of limitations was not raised at the hearing before the Workmen's Compensation Division although many varying dates of the accidental injury appeared in various reports. The following excerpt indicates the scope of the issues at the hearing.

> "The following proceedings were had:
>
> "MR. SHERMAN: This is the time and place the Workmen's Compensation Division has set to hear the disputed case of Della M. Love v. Ralph's Food Store and Truck Insurance Exchange, No. 6039-B-54. First of all, I would like to get a statement of the issues involved in this case.
>
> "MR. OLSON: As I understand it from reviewing the file, the Hearings Officer will realize this is an old case, and the issue is really whether or not there was an industrial accident under the terms of the Montana Act, and then, of course, if there was an accident, what award is coming to the claimant, if any.
>
> "MR. BENNETT: I represent the Truck Insurance Exchange, the insurer of the employer, and from my file, the indications I have are that there is a claim for compensation dated September 4, 1970 showing the date of injury July 13, 1968, and apparently there was a previous claim for compensation in the file dated August 29, 1968.
>
> "MR. SHERMAN: August 26th.
>
> "MR. BENNETT: August 26, 1968, right, and there is an issue as to whether or not an injury as defined by the statute occurred on either date, and if such did, the issue as to which date, and obviously, the question of what the amount of the award is if the Workmen's Compensation Division, in fact, determines there was an injury as defined by the statute.

"MR. SHERMAN: Very well, proceed."

Additionally the employer and his insurer had actual knowledge of the claim and conducted an extensive investigation of the claim long before one year had elapsed following the alleged injury. Such circumstances, coupled with no showing of prejudice, estop the employer and his insurer from insisting on literal compliance with the statute with respect to the July 12 injury.

Proceeding to the third issue, we find that the district court properly permitted additional testimony from claimant at the district court hearing. Many cases decided by this Court have approved this as a reasonable exercise of discretion vested in the district court. Young v. Liberty Nat. Ins. Co., 138 Mont. 458, 357 P.2d 886; Johnson v. Industrial Accident Board, 157 Mont. 221, 483 P.2d 918; O'Neil v. Industrial Accident Board, 107 Mont. 176, 81 P.2d 688; Tweedie v. Industrial Accident Board, 101 Mont. 256, 53 P.2d 1145. The following excerpt from Paulich v. Republic Coal Co., 110 Mont. 174, 187, 102 P.2d 4, illustrates the correct rule:

> "This court has indicated and held that the district court is not precluded from admitting testimony through the same witnesses and on the same matters that were testified to before the board, and in the Kelly Case, supra, it said that where the testimony so adduced is important and differs in any degree from the testimony adduced before the board on the same matters, the record of the board may be disregarded."

Directing our attention to the final issue for review we find that determination of the degree or extent of claimant's disability is properly a matter for initial determination by the Workmen's Compensation Division subject to subsequent appeal to the district court. Robins v. Ogle, 157 Mont. 328, 485 P.2d 692. The Board determined that the injury was not compensable and therefore did not award compensation. The district court had no jurisdiction to determine initially the extent of disability nor the amount of compensation payable and should have remanded the claim to the Board for that determination. Robins v. Ogle, 157 Mont. 328, 485 P.2d 692; Lind v. Lind, 142 Mont. 211, 383 P.2d 808; Obie v. Obie Signs, Inc., 143 Mont. 1, 386 P.2d 68.

For these reasons, the judgment of the district court is modified by

- 10 -

striking the amount of compensation, and as so modified the judgment of the district court is affirmed. The cause is remanded to the Workmen's Compensation Division of the Department of Labor and Industry for establishment of the extent of claimant's disability and the amount of her award.

_____
Justice

We concur:

_____
Chief Justice

_____
Justice

_____
Hon. Alfred B. Coate, District Judge,
sitting in place of Mr. Justice John C.
Harrison.

Mr. Justice Wesley Castles dissenting:

I concur in remanding the case on the last issue but dissent on the other issues. The facts of this case are substantially different, in my view and in view of the Board, from those related by the majority opinion.

The inquiry here should be whether there was a tangible happening of an unexpected nature from an unusual strain. See: Robins v. Ogle, 157 Mont. 328, 485 P.2d 692; Jones v. Bair's Cafes, 152 Mont. 13, 16, 445 P.2d 923.

The whole tenor of claimant's testimony is that she does not know when the trouble came on but does know that she has had a sore back for a long time, at least since 1965.

In Jones this Court said:

> "'The district court on appeal from the board is not justified in reversing a finding of the board unless the evidence clearly preponderates against such finding.'"

See also: Stordahl v. Rush Implement Co., 148 Mont. 13, 417 P.2d 95; Rom v. Republic Coal Co., 94 Mont. 250, 22 P.2d 161.

The Board found specifically that no specific date or incident was established and that no credible evidence of accidental injury as defined in section 92-418, R.C.M. 1947, was offered.

In one of her claims dated January 16, 1969, claimant gave as the description of the injury the date of August 26, 1968, and that "this injury was caused by continuously lifting something heavy. I have developed a type of arthritis."

In another of her claims dated September 4, 1970, claimant gave a date of injury of July 13, 1968, and to describe the accident said, "other report given to Sam Munson." In the report given to Sam Munson in her own handwriting dated June 8, 1970, she said, "* * * I do not recall any particular incident of slipping or falling that might have caused my back to be hurt but I think it was a combination of lifting of the heavy bacons and

the saw casing cover which was so heavy. On July 13, 1970, I had a lot of pain in my back and it was hard to straighten up when I was stooped over. I do not recall any particular moment it started to hurt but I just noticed it was sore. * * *"

Claimant admitted that at no time did she ever tell her employer what day she was injured. Dr. Whitehair's report dated October 30, 1968, gives the date of the accident as June 15, 1968. Dr. Whitehair's report dated December of 1968, gives the date of the accident as July 20, 1968, and a third report of Dr. Whitehair gives the date of the accident as July 16, 1968. Thus from claimant and her doctor we have the following dates: June 15, July 12, July 13, July 16, July 20, August 24, and August 26. These conflicting dates, coupled with her statement that she did not recall any incident, amounts to exactly what the hearings officer found, that no tangible happening of an unexpected nature occurred or was shown.

The so-called additional testimony before the district court "clarifying the confusion over the various dates when the injury occurred" does nothing to show a traumatic happening.

I would reverse the trial court and affirm the Board. I fear that this decision overlooks the rules of burden of proof, presumption of correctness of the findings, rules on additional testimony; and under the guise of "liberal" construction has required no proof at all---rather just an assertion that sometime during a three month period a sore back of long standing became an unusual strain from a traumatic happening of an unexpected nature.

_Wesley Castles_
Justice.

- 13 -