No. 80-179

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

RITA A. HARMON,

Claimant and Appellant,

vs.

DEACONESS HOSPITAL, Employer and
INSURANCE CO. OF NORTH AMERICA,

Defendant and and Respondent.

_____

Appeal from:   Workers' Compensation Court
               Honorable William Hunt, Judge presiding.

Counsel of Record:

    For Appellant:

        Sandall & Cavan, Billings, Montana

    For Respondent:

        Anderson, Brown, Gerbase, Cebull & Jones, Billings,
        Montana

_____

                      Submitted on briefs: November 6, 1980

                             Decided:  JAN 1 4 1981

Filed:  JAN 1 4 1981


        _Thomas J. Kearney_
_____
                              Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Claimant and appellant, Rita Harmon, appeals from a judgment of the Workers' Compensation Court denying her petition for temporary total disability benefits under the Workers' Compensation Act for injuries allegedly suffered during her employment with the Deaconess Hospital in Billings, Montana.

Claimant was an employee of Deaconess Hospital on August 6, 1978. She was employed as a nurse's aide in the pediatrics ward and was working the 6:00 a.m. to 3:00 p.m. shift that day. As a nurse's aide, claimant's duties included, among other things, assisting in the transfer of patients from surgical gurneys to hospital beds. Claimant alleges that at about 1:00 p.m., while lifting a patient weighing approximately fifty pounds, she "felt a snap" in her back and "felt a sharp pain as it snapped."

Claimant went to the nurses at the desk and told them she had felt her back snap and that it was giving her pain. A registered nurse at the desk, Nevada Hellmer, recalled claimaint's complaint of lower back pain but could not remember whether claimant had stated she hurt her back lifting a patient. The nurses advised claimant to go to the emergency room to have the pain checked out, which she did immediately.

Claimant was admitted to the emergency room at Deaconess Hospital at approximately 1:15 p.m. on August 6, 1978. She filled out all necessary papers and forms. Claimant testified she informed at least one or more persons that she hurt her back while lifting a patient. Dr. Mark Larsen examined claimant in the emergency room and took X-rays. He diagnosed claimant as having an arthritic condi-

tion and prescribed pain killers and bed rest from August 6
to August 8, or until the pain decreased.

Claimant left the emergency room at 3:00 p.m. and was
given a ride home by a licensed practical nurse, Linda
Gillispie. Gillispie testified that claimant told her that
she had hurt her back on the floor while lifting a patient.

The treatment record of the emergency room examination
states the patient had pain from her low back to her coccyx,
that she had the same problem a year ago, and that there is
no history of trauma. The registered nurse who noted "no
history of trauma" testified that the note indicated that
claimant gave no statement that any unusual activity could
have caused the lower back pain.

Claimant's husband testified that he called the house
supervisor at the hospital at about 10:00 p.m. on the night
of August 6, 1978, to inform her that his wife would miss
work and that she injured her back while lifting a patient.
Nancy Bates made a note of his call but testified she did
not recall if she was advised that claimant had been injured
in an industrial accident. The absentee record states the
claimant was absent due to low back pain.

Claimant returned to work on or about August 13, 1978,
and continued to work until approximately February 3, 1979.
During this period, claimant suffered increasing difficulty
and pain with respect to her back. It was not until Febru-
ary 1979 that claimant next saw a doctor, at which time she
learned she was pregnant. Claimant's obstetrician, Dr. Lee
Raitz, suggested that the medication she was taking for her
back might affect her pregnancy and that she should see Dr.
Phillip Griffin.

Claimant testified that Dr. Griffin would not take any X-rays because of her pregnancy, but that he did review the X-rays taken by Dr. Larsen in August. Dr. Griffin told claimant she had a slipped disk and recommended more bed rest and medication. The doctor's records indicate that the low back pain was not due to pregnancy.

On February 17, 1979, Dr. Griffin hospitalized claimant for severe back pain. An orthopedic surgeon, Dr. James Schwarten, was called in for consultation. Upon reviewing the X-rays taken August 6, 1978, Dr. Schwarten confirmed Dr. Griffin's opinion by diagnosing claimant as having a "herniated lumbar disk." Both doctors concurred in their treatment, recommending bed rest, therapy and the use of a corset. Dr. Schwarten suggested that surgery might be necessary.

Claimant was released from the hospital on February 22, 1979, and advised not to return to work. On September 22, 1979, claimant's child was born. She testified that since September 22, 1979, she has continued to suffer problems with her back which have prevented her from returning to work prior to the time of trial.

Claimant admits that no written notice of her claim for compensation was made until February 1979. She maintains, however, that the employer or a supervisor in charge was given verbal notice of her injury and had actual knowledge of her accident and injury within the required sixty days.

The issues raised on appeal are whether respondent-employer had notice or actual knowledge of the industrial injury as defined in section 39-71-603, MCA; and, if so, whether claimant suffered a compensable industrial injury as defined in section 39-71-119, MCA.

Claimant contends she suffered a compensable injury and that the actions taken by her shortly thereafter gave her employer actual notice in accordance with the statute.

Respondent's position is that neither the Deaconess Hospital nor its managing agent in charge had actual knowledge of the accident allegedly suffered by claimant. Even though the supervisor knew claimant had low back pain, respondent argues that this is not equivalent to the knowledge that claimant was injured in an accident.

If the Workers' Compensation Court's findings are based on conflicting evidence, as they are in this case, this Court's function on review is confined to determining whether there is substantial evidence on the whole record supporting such findings. Hume v. St. Regis Paper Company (1980), _____ Mont. _____, 608 P.2d 1063, 37 St.Rep. 378. If there is substantial evidence to support the findings of the Workers' Compensation Court, we cannot overturn that decision. Jensen v. Zook Bros. Const. Co. (1978), 178 Mont. 59, 581 P.2d 1191, 1193, 35 St.Rep. 1066, 1068; Steffes v. 93 Leasing Co., Inc. (U.S.F.&G.) (1978), 177 Mont. 83, 580 P.2d 450, 452, 35 St.Rep. 816, 818.

A review of the record indicates claimant testified that on August 6, 1978, she advised one or more of the emergency room personnel that she was hurt on the job. Claimant's husband testified he told a registered nurse that his wife was injured while lifting a patient. Claimant's testimony was corroborated by Linda Gillispie, but the Workers' Compensation Court dismissed Gillispie's testimony because she was not a managing agent or supervisor in charge. Two registered nurses testified they had no recollection if

-5-

either claimant or her husband had advised them of an industrial accident on August 6, 1978.

This Court has previously held that the testimony of a witness that he does not remember whether a certain event or conversation took place does not contradict positive testimony that such event or conversation did take place. Lasby v. Burgess (1930), 88 Mont. 49, 289 P. 1028; Lindbolm v. Employers' Liability Assurance Corp. (1930), 88 Mont. 488, 295 P. 1007; Blaser v. Clinton Irrig. Dist. (1935), 100 Mont. 459, 53 P.2d 1141; In re Nelson (1936), 103 Mont. 43, 60 P.2d 365. Thus, we have here the uncontradicted positive testimony of claimant and her husband that the employer or its agent had actual knowledge of claimant's accident and injury on August 6, 1978, the day it is claimed to have happened.

The Workers' Compensation Court also relied on the absence of any notation of an industrial accident in the treatment records of the emergency room or in claimant's absentee records. An emergency room nurse testified that normally the treating physician would fill out an Industrial Accident Board sheet; however, a new group of doctors had taken over emergency room services in July 1978, and they were having problems with the forms. In fact, there was established no automatic procedure for reporting industrial accidents until at least two months after claimant was seen in the emergency room. Also, the absentee record dated August 6, 1978, stated the reason for claimant's absence was low back pain. The nurse who filled out the record testified that she would not distinguish between regular pain and an industrial accident in making the note.

As stated previously, our function is to determine whether the Workers' Compensation Court findings are supported by substantial evidence. Substantial evidence is such as will convince reasonable men and on which such men may not reasonably differ as to whether it establishes the party's case, and, if all reasonable men must conclude that the evidence does not establish such case, then it is not substantial evidence. Adami v. Murphy (1945), 118 Mont. 172, 164 P.2d 150; Grand Trunk Railway Co. v. Ives (1892), 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485.

We hold the court's finding of fact that the employer did not have actual knowledge of claimant's injury within the statutorily required time is not supported by substantial evidence on the whole record.

While still on shift duty and wearing the uniform of a nurse's aide, claimant reported to emergency room personnel that her back hurt. Dr. Larsen authorized X-rays to be taken. It is at that point that an agent of Deaconess Hospital had actual knowledge of claimant's alleged industrial accident.

Dr. Larsen was the emergency room physician on duty for Deaconess Hospital. Section 28-10-103, MCA, provides: ". . . An agency is actual when the agent is really employed by the principal. . ." Section 28-10-604, MCA, provides: "As against a principal, both principal and agent are deemed to have notice of whatever either has notice of and ought, in good faith and the exercise of ordinary care and diligence, to communicate to the other." Thus, Deaconess Hospital had notice of claimant's alleged industrial accident on the day it occurred through Dr. Larsen, its managing agent.

The purpose of the notice requirement or actual knowledge in lieu thereof is to enable the employer to protect himself by prompt investigation of the claimed accident and prompt treatment of the injury involved with a view toward minimizing its effects by proper medical care. See 2 Larson, Workmen's Compensation Law, §§ 78.00 et seq. In the instant case, within two hours of the alleged accident, the employer had notice, a diagnosis and prescribed medical treatment for the injury. Thus, the purpose of the statute was fulfilled, and the employer was protected.

The second issue is whether the finding of the Workers' Compensation Court that claimant did not suffer a compensable injury is supported by substantial evidence.

In Stamatis v. Bechtel Power Co. (1979), ____ Mont.

___, 601 P.2d 403, 406, 36 St.Rep. 1866, 1870, we stated:

"The Act in pertinent part defines an injury in this language:

"'"Injury" or "injured" means:

"'(1) a tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom . . .' Section 39-71-119(1), MCA.

"We have previously interpreted this language to mean that a claimant can recover if the physical harm suffered is unusual either from the standpoint of cause or effect. Love v. Ralph's Food Store (1973), 163 Mont. 234, 242, 516 P.2d 598, 602; Robins v. Ogle (1971), 157 Mont. 328, 333, 485 P.2d 692, 695; Jones v. Bair's Cafe (1968), 152 Mont. 13, 19, 445 P.2d 923, 926. However, claimant must still prove a tangible happening of a traumatic nature. Dumont v. Wickens Bros. Construction Co., supra, 598 P.2d at 1108; Erhart v. Great Western Sugar Company (1976), 169 Mont. 375, 380-381, 546 P.2d 1055, 1058; Hurlbut v. Vollstedt Kerr Company (1975), 167 Mont. 303, 306-307, 538 P.2d 344, 346. We have explained the meaning of a tangible happening of a traumatic nature in these words:

> "'A tangible happening must be a perceptible
> happening. [Citations omitted.] Some action
> or incident, or chain of actions or incidents,
> must be shown which may be perceived as a
> contributing cause of the resulting injury.
> This court has found neurosis compensable, but
> a tangible, real happening must be the cause
> of the condition. [Citations omitted.] . . .
> In the recent case of Love where a gradual
> buildup of back pain was found compensable,
> this Court emphasized two specific incidents
> of strain were perceptible from the record.'
> Erhart, supra, 169 Mont. at 381, 546 P.2d at
> 1058."

In the court's findings there exists no evidence that claimant did not suffer a tangible happening of a traumatic nature causing the physical pain. In the record, there is evidence that claimant "felt a snap" while lifting a patient weighing approximately fifty pounds. This is a tangible, perceptible happening.

The X-rays taken in the emergency room were viewed by three doctors. The first doctor diagnosed claimant as having an arthritic condition while the other two were of the opinion that she had a slipped disk. We must conclude there is not substantial evidence that claimant did not suffer a compensable injury. The facts in the whole record indicate the contrary to be true.

The judgment of the Workers' Compensation Court is vacated and set aside. The cause is remanded to the Workers' Compensation Court to enter judgment to conform to this opinion.

_____
                    Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-