No. 82-01

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

DORIS WISE,

Claimant and Respondent,

vs.

RUTH PERKINS, d/b/a
HIDEAWAY,

Employer,

and

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,

Defendant and Appellant.

Appeal from:  Workers' Compensation Court
Honorable Tim Reardon, Judge presiding.

Counsel of Record:

For Appellant:

James P. Harrington, Butte, Montana

For Respondent:

Greg J. Skakles, Anaconda, Montana 59711

Submitted on briefs: October 26, 1982

Decided:  January 6, 1983

Filed:   JAN 6 1983

Thomas J. Kearney
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Claimant was awarded temporary total disability benefits, permanent total disability benefits, medical expenses, and attorney fees by a September 15, 1981, judgment of the Workers' Compensation Court. Employer now appeals.

Claimant, Doris Wise, was employed by Ruth Perkins, d/b/a Hideaway, a bar-restaurant combination in Anaconda. She began working at the Hideaway in August 1976, as a janitress. This work required her to clean the business premises seven days a week. She began at 6:00 a.m. and worked two to two and one-half hours on week days and four to five hours on Saturday and Sunday. Her duties included mopping, sweeping and buffing the floors, cleaning the bathrooms, and dumping garbage.

In September 1976, claimant began to bartend one eight hour shift on Sundays in addition to her janitorial work. Then, in November 1977, she began bartending Monday through Saturday and worked either six or eight hour shifts each night in addition to cleaning each day. This work pattern continued until her employment terminated on April 28, 1978.

On December 28, 1977, employer's brother and ex-husband were killed in a plane crash. All responsibility for the operation of the Hideaway from that date to January 12, 1978, fell on claimant. This drastically altered the work claimant was required to perform.

During this period, claimant arrived at the Hideaway at 6:00 a.m. and cleaned, stocked the coolers, opened the bar at 10:00 a.m., and bartended until late afternoon or early evening. She would then be relieved for a few hours before she returned to tend bar until closing at 2:00 a.m. Although claimant was generally permitted to sit on a stool behind the bar during slack times at work, she did not have the time to do so to any extent during this period. New Year's Eve was particularly busy and claimant was unable to sit down at all. She stayed at work that

night until 3:00 a.m. in order to clean up part of the mess, returned at 6:00 a.m. to clean and open the bar, and worked a full eight hour shift tending the bar. It was the next day, January 2, 1978, that she first noticed a swelling and sore spots in her legs. From that date forward, she continued to notice swelling and pain in her legs and feet after standing or walking. Between January 2, 1978, and April 28, 1978, claimant continued to clean the premises daily and to bartend six weekly shifts of six to eight hours each.

On April 28, employer found her at work barefoot. Her legs were so swollen that she could not get boots or shoes on them. Employer told claimant to go home and to have the condition treated.

Claimant's condition was diagnosed as thrombophlebitis of both legs. She filed a claim for compensation with the Division of Workers' Compensation. This matter, by stipulation of counsel, was submitted to the Workers' Compensation Court on the depositions of claimant, employer, Dr. John A. Romito, and Dr. Richard Best in lieu of trial. The court found that claimant had suffered an injury within the meaning of section 39-71-119(1), MCA, and awarded her temporary total disability, permanent total disability, medical expenses, and costs and attorney fees.

Employer presents three issues on appeal:

1. Whether substantial evidence establishes that claimant's injury arose in the course and scope of her employment;

2. Whether substantial evidence supports the Worker's Compensation Court's finding that claimant is permanently, totally disabled; and

3. Whether claimant suffered an "injury" within the meaning of section 39-71-119(1), MCA.

This Court will not substitute its judgment for that of the Workers' Compensation Court where there is substantial evidence to support its findings of fact. See Stamatis v. Bechtel Power Co. (1979), ___ Mont. ___ , ___ , 601 P.2d 403, 405, 36 St.Rep.

- 3 -

1866, 1869, and cases cited therein. Where findings are based upon conflicting evidence, our function is to determine whether substantial evidence such as will convince reasonable men supports the findings. Harmon v. Deaconess Hospital (1981), _____ Mont. _ ___, 623 P.2d 1372, 1375, 38 St.Rep. 65, 68.

Employer challenges the sufficiency of evidence to support a finding that claimant's phlebitis arose in the course and scope of her employment. She argues first that claimant rarely worked a forty-hour week during the term of her employment. Second, she argues that while prolonged standing in one spot can contribute to the development of phlebitis, the walking which claimant's work required could actually be helpful rather than harmful. Finally, she contends that because claimant would sit in one position and sew on her off-duty hours, that an alternative cause of injury outside of the course and the scope of employment is presented. These arguments fail.

The record supports the Workers' Compensation Court finding that claimant worked excessive hours during the period from December 28, 1977, to January 12, 1978. It also supports a finding that claimant then continued to work six shifts of six to eight hours each per week in addition to her cleaning duties. Claimant and employer both testified to claimant's increased responsibilities and workload from August 1976 until her termination on April 28, 1978.

Both physicians testified that a number of factors can contribute to the development of phlebitis, including prolonged standing, trauma, heart failure, cancer, tumors, pregnancy, and blood deficiencies.

Based upon their medical examinations and claimant's employment history, the doctors each named the standing required by her work as a contributing factor causing the phlebitis. Dr. Romito testified that based upon a reasonable degree of medical certainty, claimant's employment duties were the cause of her phlebitis. He further stated that if an individual had a vascu-

- 4 -

lar condition of phlebitis, "standing alone, certainly walking, but the standing alone" would be enough to aggravate and in fact cause the condition for which he treated claimant. Dr. Best also testified that standing was a contributing factor in the development of phlebitis. Both physicians eliminated other factors as potential causes of the phlebitis, on the basis of their examinations and the medical histories taken.

Nor does the record support employer's contention that claimant's phlebitis could have been caused by sitting and sewing. Dr. Best, employer's physician, rejected sitting as a cause of phlebitis unless other contributing factors were present. Dr. Romito was asked if it were possible that the phlebitis was caused by sitting still sewing for long periods of time. He answered "no." Even when asked to disregard claimant's employment activities and to consider the hours of sitting still in isolation, he stated that it would be very unusual for the sitting to cause such a problem. Sufficient evidence supports the Workers' Compensation Court's finding that claimant's injury was work related.

Employer next challenges the sufficiency of evidence to support the conclusion that claimant is permanently totally disabled. This argument is without merit. Employer founds her argument upon the doctors' testimony that claimant "might" be able to perform work that involved some walking. Employer ignores the extensive evidence presented that demonstrates claimant's continuing disability.

Dr. Romito testified that after close observation and treatment of the condition for five months without significant improvement, he anticipated that claimant would continue to suffer from phlebitis for the remainder of her life. While Dr. Romito answered that claimant might be able to work in a position in which she walked, rather than stood, the answers reflected a "try a job and see if you can handle it" attitude. He first stipulated that she should wear good custom-made support hose,

that she work very limited hours, and that she not work as a waitress or bartender. When asked directly whether he would suggest or recommend that claimant work as a bartender, Dr. Romito answered, "absolutely not," and extended that answer to "any occupation which would require standing or walking." Dr. Best limited his approval of work, such as sales clerk work, to a situation where claimant would be walking around. He stated: "[I]f she has to stand around and talk to people and not move, she should avoid that."

Claimant testified that she cannot be on her feet for any extended period of time and that she must elevate her legs or lie down periodically during the day to prevent the phlebitic swelling and pain. Since termination of her employment, she has had several episodes of phlebitis after sitting and sewing and subsequently must now refrain from sitting for any extended period of time. On at least three occasions she has had blood clots develop in her legs. When a clot dislodged and traveled to her lungs during one of these episodes, claimant was hospitalized for severe chest pain. This attack stemmed from the activity she engaged in during a move from one house to another. A second flare-up after the move resulted in ordered bed rest. Both physicians testified that the pain suffered by a patient with such a medical condition varies considerably from individual to individual.

Permanent total disability is defined in section 39-71-116(13), MCA, as follows:

> "'Permanent total disability' means a condition resulting from injury as defined in this chapter that results in the loss of actual earnings or earning capability that exists after the injured worker is as far restored as the permanent character of the injuries will permit and which results in the worker having no reasonable prospect of finding regular employment of any kind in the normal labor market. Disability shall be supported by a preponderance of medical evidence." (Emphasis added.)

In interpreting this section, this Court has stated:

> "We hold that this evidence is sufficient to support the finding of the Workers'

Compensation Court that claimant is permanently and totally disabled despite the fact that he can and has done various odd jobs. As we have said before:

"'. . . a man with a stiffened arm or damaged back or badly weakened eye will presumably have a harder time doing his work well and meeting the competition of young and healthy men. When a man stands before the Workers' Compensation Court with proven permanent physical injuries, for which the exclusive remedy clause has abolished all possibility of common-law damages, it is not justifiable to tell him he has undergone no impairment of earning capacity, solely on the strength of current pay checks.' Fermo v. Superline Products (1978) Mont. 574 P.2d 251, 253, 35 St. Rep. 22.

"Because claimant can perform a few odd jobs for short periods of time does not preclude a finding that claimant is totally and permanently disabled. This is especially true where, as here, the evidence shows that the claimant must work with a substantial degree of pain." Jensen v. Zook Bros. Construction Co. (1978), 178 Mont. 59, 62-63, 582 P.2d 1191, 1193.

Here, claimant has been instructed to not work as a bartender or in any occupation that would require standing or walking. She cannot sit for any length of time without developing swelling or pain in her legs. She must elevate her feet several times a day to prevent a flare-up of her symptoms. Employer's physician has advised against any occupation that would require standing or sitting for any length of time. He recommended sales clerk work only if claimant could move around -- not if she has to "stand around and talk to people."

Claimant was thirty-seven years of age on the date of her termination. She married two months after finishing high school and had five children. The only employment experience claimant had prior to her employment at the Hideaway was nine months of work as a clerk at a Circle K store in 1973, and approximately a year and a half of work as a cashier and hotel clerk from fall 1974 to spring 1976. She was earning $2.25 per hour for cleaning and $4.25 per hour for bartending at the date of her termination.

Claimant has no reasonable prospect of employment. Her capabilities have been severely restricted. Substantial evidence

supports the holding of the Workers' Compensation Court.

Employer's final argument is that claimant's phlebitis is not an injury within the meaning of section 39-71-119(1), MCA. She argues that there is no evidence of a tangible, perceptible happening of a traumatic nature and that claimant's phlebitis would therefore be an occupational disease if it arose in the course and scope of her employment. We reject this argument.

Section 39-71-119, MCA, defines injury as:

> "(1) A tangible happening of a traumatic nature from an unexpected cause or unusual strain resulting in either external or internal physical harm and such physical condition as a result therefrom and excluding disease not traceable to injury, except as provided in subsection (2) of this section."

Two elements must be demonstrated: (1) a tangible happening of a tangible nature; and, (2) that this is the cause of physical harm. Moen v. Decker Coal Co. (1979), ____ Mont. ____, 604 P.2d 765, 767, 36 St.Rep. 2220, 2222. Employer contends that claimant's phlebitis gradually developed and progressed over four months. That is not the case.

The Workers' Compensation Court concluded that "the week beginning on December 28, 1977, was a tangible happening of a traumatic nature from an unusual strain." The court based this conclusion upon testimony establishing the excessive hours claimant worked during that period and it relied upon our holding in Hoehne v. Granite Lumber Co. (1980), ____ Mont. ____, 615 P.2d 863, 865, 37 St.Rep. 1307, 1309-1310. In Hoehne, we recognized that a tangible happening need not be a single isolated incident, but may very well be a chain of incidents leading to injury. There the claimant suffered from a bilateral carpel tunnel syndrome brought on by a chain of incidents as claimant stacked two by fours at a lumber yard every day. We found that the unusual straining resulting in this unexpected injury was caused by a tangible happening. See also, Love v. Ralph's Food Store (1973), 163 Mont. 234, 241-242, 516 P.2d 598, 602-603; Robins v Ogle (1971), 157 Mont. 328, 333, 485 P.2d 692, 694-695; Jones v.

Bair's Cafes (1968), 152 Mont. 13, 19, 445 P.2d 923, 926.

Claimant's excessive work schedule during the week beginning December 28, 1977, is similarly a tangible happening that resulted in an unusual strain. Substantial evidence supports the conclusion that claimant's phlebitis developed during that period rather than over four months. She testified that she first noticed the pain and swelling on January 2, 1978. Dr. Romito testified that phlebitis affecting the superficial veins system can result in a narrowing of the system that would cause symptoms and lead itself toward clots within a matter of days. Finally, claimant's unrebutted testimony established that she had no prior history of phlebitis and Drs. Romito and Best testified that phlebitis is not an expected result of work as a bartender.

In order to establish that claimant's phlebitis is an occupational disease rather than an injury, employer must demonstrate the distinction between injury and occupational disease. The two crucial points of distinction are time definiteness and unexpectedness. Larson's Workmen's Compensation Law, Section 41.31 p. 7-357-359. Employer has failed to demonstrate that the phlebitis developed over time or that it was expected. The record supports the conclusion of the Workers' Compensation Court that claimant was injured within the meaning of section 39-71-119(1), MCA.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 9 -